[Cite as *State v. Vinson*, 2017-Ohio-4275.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28313 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LAMONT T. VINSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2016 01 0189 |

DECISION AND JOURNAL ENTRY

Dated: June 14, 2017

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellant, Lamont T. Vinson, appeals his convictions and sentence entered in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm in part, reverse in part, and remand.

I.

{¶2} On December 11, 2015, C.C. drove to her late mother's house located on Manchester Road in Akron, Ohio. Upon arriving at the house, C.C. discovered that the side door to the home had been broken into and that some of her late mother's jewelry had been stolen. C.C. reported this incident to the police. The police ultimately located the stolen items at Cashland, a financial services and retail business located in Barberton, Ohio. Cashland's records showed that on December 12, 2015, Vinson sold five pieces of jewelry for $562.00. On December 15, 2015, C.C. retrieved her late mother's jewelry from Cashland.

**{¶3}** On February 1, 2016, the Summit County Grand Jury indicted Vinson on one count of receiving stolen property in violation of R.C. 2913.51(A), a fifth-degree felony, and one count of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1), also a fifth-degree felony. Vinson pleaded not guilty to both counts contained in the indictment and the matter ultimately proceeded to a one-day jury trial.

**{¶4}** On June 13, 2016, the morning of trial, Vinson pleaded guilty to the aggravated possession of drugs count contained within the indictment. The matter proceeded to trial on the remaining count for receiving stolen property. At the close of the State's case-in-chief, Vinson made a Crim.R. 29 motion for judgment of acquittal, which the trial court denied. Vinson then testified on his own behalf. At the close of evidence, Vinson renewed his Crim.R. 29 motion, which the trial court again denied. The jury ultimately found Vinson guilty of receiving stolen property, but found the value of the stolen property to be less than $1,000.00. Thus, the jury convicted Vinson of a first-degree misdemeanor instead of a fifth-degree felony. *See* R.C. 2913.51(C). The trial court subsequently sentenced Vinson according to law.

**{¶5}** Vinson filed this timely appeal and raises three assignments of error for this Court's review. To facilitate our analysis, we elect to address Vinson's first and second assignments of error together.

## II.

### Assignment of Error I

**Mr. Vinson's conviction for receiving stolen property was against the manifest weight of the evidence.**

### Assignment of Error II

**The trial court committed reversible and plain error when it overruled Mr. Vinson's Crim.R. 29(A) motion for judgment of acquittal because the evidence was insufficient to support a conviction.**

**{¶6}** In his first and second assignments of error, Vinson argues that his conviction for receiving stolen property is both supported by insufficient evidence and against the manifest weight of the evidence.[1] We disagree on both points.

**{¶7}** "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "Circumstantial and direct evidence inherently possess the same probative value." *Id.* at paragraph one of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus. Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775 , ¶ 33.

**{¶8}** A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins* at 387. Accordingly, when applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences,

---

[1] Vinson does not challenge his conviction for aggravated possession of drugs.

consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson,* 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶9} This matter implicates Vinson's conviction for receiving stolen property in violation of R.C. 2913.51(A), a first-degree misdemeanor. R.C. 2913.51(A) states that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶10} The State presented evidence at trial demonstrating that C.C. called the police on December 11, 2015, to report that her late mother's house had been broken into and that some of her late mother's jewelry had been stolen. Detective Robert Lehman of the Akron Police Department testified that C.C. reported several pieces of jewelry stolen, including a very distinct gold pendant eagle with a diamond set within its talons. Detective Lehman testified that upon searching for this pendant in the LEADS online program, he located it along with the other stolen pieces of jewelry at a business known as Cashland in Barberton, Ohio. C.C. positively identified the jewelry at Cashland as belonging to her late mother and subsequently retrieved the jewelry.

{¶11} The State also presented the testimony of the Cashland employee who purchased the jewelry in question. The employee testified that on December 12, 2015, she purchased "a bunch of different gold items" from Vinson. The employee testified that she specifically remembered purchasing the gold eagle pendant because she thought it was a "nice piece." The employee testified that per company policy, she made a copy of the seller's driver's license. The employee stated that the seller's driver's license was valid on the day in question and that the full name on the seller's driver's license was "Vinson Lamant Tyrone." The employee testified that the picture on the seller's driver's license matched the person who was selling the jewelry in the store. The employee then identified Vinson at trial as the person who sold the jewelry to her. The employee further testified that Vinson signed paperwork verifying that he had the right to possess and sell the jewelry in question. C.C. testified at trial that she does not know Vinson and never gave him permission to sell the jewelry.

{¶12} Moreover, Detective Lehman testified that he interviewed Vinson on January 19, 2016. Detective Lehman testified that during this interview, Vinson denied any involvement in selling the jewelry in question and suggested that an unknown individual named "Rodney" was actually responsible. Moreover, Detective Lehman stated that Vinson told him during the interview that he lost his driver's license several months ago. Detective Lehman testified that Vinson obtained a new driver's license on January 7, 2016, and that the picture in the new license depicts Vinson wearing large eye glasses unlike the pictures in his previous driver's licenses.

{¶13} After viewing this evidence in a light most favorable to the State, we conclude that the evidence presented at trial was sufficient for a jury to conclude that Vinson received and/or disposed of C.C.'s late mother's jewelry knowing or having reasonable cause to believe

that the jewelry was obtained through the commission of a theft offense. C.C. testified that the jewelry in question was stolen from her late mother's house. She also testified that Vinson did not have permission to sell this jewelry. Further, the Cashland employee testified that Vinson was the individual who sold her the jewelry and that Vinson asserted that he had the right to possess and sell the jewelry. Lastly, Detective Lehman testified that Vinson denied any involvement with the jewelry in question and attempted to blame the crime on a mysterious individual known only as "Rodney." The Supreme Court of Ohio and the United States Supreme Court have concluded that, "'[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.'" *State v. Arthur*, 42 Ohio St.2d 67, 68 (1975), quoting *Barnes v. United States*, 412 U.S. 837 (1973). Thus, provided Vinson's unsatisfactory explanation to Detective Lehman in light of the Cashland employee's positive identification of Vinson at trial, we determine that the State presented sufficient evidence from which the jury could reasonably infer that Vinson knew that the jewelry he sold at Cashland had been stolen. Accordingly, we determine that the State met its burden of production in this matter.

{¶14} Turning to his manifest weight challenge, Vinson contends that his conviction for receiving stolen property is against the manifest weight of the evidence for several reasons. First, at trial, Vinson denied any involvement in the sale of the jewelry in question. In fact, Vinson denied having ever seen the jewelry in question and testified that he does not even know where Cashland is located. Moreover, Vinson testified that he lost his driver's license several months before the day in question and that he was not the individual who provided Cashland

with this form of identification. Vinson also testified that the signature on the Cashland receipt is not his signature. Lastly, although the Cashland employee positively identified Vinson at trial as the individual who sold her the jewelry, the employee could not recall either if the seller had hair on top of his head or if he had facial hair. Moreover, the Cashland employee testified that the seller did not have any tattoos on his face despite the fact that Vinson does have tattoos on his face and neck.

{¶15} However, notwithstanding Vinson's trial testimony, the jury apparently believed the State's theory of the case, which was predicated upon the testimony of Detective Lehman, C.C., and the Cashland employee. The testimony of these three witnesses, if believed, supports the conclusion that Vinson sold C.C.'s late mother's stolen jewelry. Although the Cashland employee identified Vinson as the jewelry seller despite testifying that the seller on the day in question did not have facial tattoos, we do not think that this renders her identification inaccurate or unreliable. The Cashland employee testified that she did not observe any tattoos on the seller because he was wearing a coat. Moreover, the Cashland employee testified that the man who sold her the jewelry looked like the individual in the photograph on the driver's license that was presented during the sale. The Cashland employee made a copy of this driver's license at the time of sale and Detective Lehman testified that this was Vinson's driver's license. This testimony, if believed, demonstrates that Vinson was the individual who sold C.C.'s late mother's stolen jewelry at Cashland on the day in question. The trier of fact "'is free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. A verdict is not against the manifest weight of the evidence merely because the trier of fact found the State's witnesses to be credible. *State v. Andrews*, 9th Dist.

Summit No. 25114, 2010-Ohio-6126, ¶ 28. Thus, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in convicting Vinson of receiving stolen property.

{¶16} Vinson's first and second assignments of error are overruled.

**Assignment of Error III**

**The trial court committed reversible error by imposing court costs in its sentencing entry when it did not impose those costs in open court at the sentencing hearing.**

{¶17} In his third assignment of error, Vinson argues that the trial court erred by imposing court costs because it failed to impose court costs in open court at the sentencing hearing. We agree.

{¶18} R.C. 2947.23 requires trial courts to impose court costs in criminal cases, and a trial court may waive the payment of costs upon the motion of an indigent defendant. *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, ¶ 14. A motion to waive the payment of costs must be made at the time of sentencing, but the Supreme Court of Ohio has held that when a trial court fails to mention costs during the sentencing hearing, a defendant is denied the opportunity to request a waiver. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, ¶ 13. When court costs are subsequently imposed in a sentencing entry, a trial court violates Crim.R. 43(A) by depriving the defendant of the right to be present at each stage of the proceedings. *Id*. at ¶ 22. The appropriate remedy for such an error is to remand the case for the limited purpose of permitting the defendant to move for a waiver of the payment of court costs. *Id*. at ¶ 23.

{¶19} In its merit brief, the State acknowledges that the trial court did not mention court costs during Vinson's sentencing hearing, but did impose costs in its sentencing entry. Upon review of the record, we agree with both Vinson and the State that the trial court erroneously imposed court costs in its sentencing entry after failing to discuss the payment of court costs

during the sentencing hearing. Accordingly, we determine that the trial court erred by imposing court costs against Vinson without giving him the opportunity to seek a waiver of payment. *See State v. Kirby*, 9th Dist. Summit No. 27986, 2016-Ohio-8138, ¶ 15 (sustaining appellant's assignment of error where the trial court imposed court costs in its sentencing entry without discussing court costs at the sentencing hearing).

{¶20} Vinson's third assignment of error is sustained.

### III.

{¶21} Vinson's first and second assignments of error are overruled and his third assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.